THE PEOPLE, *ex rel.* Edwards W. Fiske, *vs.* THE COMMON COUNCIL OF THE CITY OF BROOKLYN and THE COMMISSIONERS for widening *Fulton street.*

The common council of the city of Brooklyn adopted the following resolution: "Whereas, that part of Fulton street opposite the City Hall is very narrow, and the present is the best opportunity the city may have for some time to widen said street, therefore, Resolved, that the matter of widening said street be referred to the street committee."   That committee reported in favor of the measure, and recommended that an application should be made to the legislature for leave to make the improvement.   Application was accordingly made, and an act was passed by the legislature, on the 17th of April, 1854, entitled "An act to widen Fulton street, between Red Hook Lane and Court street, in the city of Brooklyn," and providing that "Fulton street, between Red Hook Lane and Court street, *is hereby widened* as follows."   The second section provides that the common council *may* apply to the county court, or to the supreme court, at a special term, for the appointment of commissioners of estimate and assessment, &c.   Subsequently the common council adopted a resolution directing the city counsel forthwith, upon the receipt of "the act *widening* Fulton street," to take the necessary and legal measures *to carry out the provisions of the law for that purpose.*   The city counsel accordingly applied to the county court for, and procured the appointment of, three commissioners of estimate and assessment.   *Held,* that the statute was peremptory upon the common council to pursue the designed improvement to its consummation; and that upon the refusal of the common council to proceed with such improvement, a *mandamus* would lie.

*Held also,* that an order made by the supreme court, at a special term, authorizing the common council to discontinue proceedings for widening the street, was not for either of the purposes for which alone that court could act, and was therefore void, for the want of jurisdiction in the court to grant it.

*Held further,* that the provision in the 2d section of the statute, that the common council "may" cause application to be made for the appointment of

The People *v.* Common Council of Brooklyn, &c.

commissioners, did not leave it optional with the common council whether to proceed or not, nor indicate that the project had not been conclusively adopted, and its completion peremptorily ordered, by the legislature.

The word "shall" may be substituted for "may" in the interpretation of a statute, when the good sense of the entire enactment requires the change.

This rule applies when a statute establishes an improvement, and devolves upon any person or persons, or a corporation, the performance of such acts as may be requisite to insure its completion.

THIS was an application for a peremptory mandamus to compel the defendants to proceed in the matter of the widening of Fulton street in the city of Brooklyn, and to complete the same. The facts are fully stated in the opinion of the court.

*H. C. Murphy,* for the relator. I. The duty of the common council is prescribed by the special act widening Fulton street, passed April 17, 1854. (*Sess. Laws of* 1854, *p.* 781.) By that statute no discretion is vested in the common council as to whether the street shall or shall not be widened. The corporation asked, and the legislature granted, a law widening the street *ipso facto ;* thus absolutely divesting the owners of the land of the right to use the property required for the street. The providing compensation was therefore the only duty of the common council. The act is mandatory upon them for that purpose.

II. When there is no discretion vested in the corporation as to the propriety or impropriety of the improvement, and the legislature has directly exercised the right of taking private property for public use, the assumption by the corporation of a right to withhold the compensation would nullify the law, which cannot be supposed.

III. The cases in the books have arisen in proceedings where the corporation had the right to determine, themselves, as to the propriety of the improvement. (*See The People* v. *Corporation of Brooklyn,* 1 *Wend.* 321.) The court, following the act of April 3, 1827, say, "The trustees are *authorized, but not compelled,* to lay out and make such new streets as they shall think necessary."

IV. Even in the proceedings over which the common council have the whole control, the relator, as a tax payer and resident representing the public and having a public interest in the performance of the law, is entitled to compel the corporation to go on. (*Martin* v. *Mayor &c.*, 1 *Hill*, 545.)

V. The order of discontinuance in the supreme court was *coram non judice.* No proceedings were ever had in that court, and none could be had except as provided by the statute. The commissioners were appointed by the county court.

VI. The common council, in 'refusing to perform the law, do not profess to act for the public good; (*see report of assessment committee ;*) but, having an interest as proprietors in the land assessed, seek to exercise' their power for their private benefit as a corporation.' They should have made their objections to the report of the commissioners, like any other owner not satisfied with it. (*See Laws of* 1850, *p.* 268, § 12.)

*R. C. Brainard,* for the defendants. I. The order of discontinuance of proceedings, made by the supreme court at special term, is a fatal objection to. the application for a mandamus, until said order is vacated on appeal; the supreme court having full jurisdiction over the subject matter. (*In the matter of Dover street,* 18 *John.* 506.)

II. The statute authorizing the improvement is not peremptory, but gives the common council discretionary power to make the said improvement or not, as may to .them seem best. Neither the spirit nor the letter of the act requires that the words occurring in the second section of said statute, to wit: " The common council may make application to the county court, &c. for the appointment of commissioners of estimate and as-sessment," should be construed to mean *shall* make application, &c. (*See People* v. *Lambier,* 5 *Denio,* 9; *also The Newburgh Turnpike Co.* v. *Miller,* 5 *John. Chan.* 101.)

III. The common council, having a discretion in the matter, had the right to discontinue the proceedings, of its own motion, as it did, before the confirmation of the commissioners' report; and more especially was the discontinuance regular, when made

by leave of the court. (*See Hawkins* v. *The Trustees of Rochester*, 1 *Wend.* 53. *In the matter of Dover street*, 18 *John.* 506. *In the matter of Beekman street*, 20 *id.* 269.)

IV. It never was the intention of the common council to discontinue proceedings, except for the purpose of commencing proceedings *de novo*, as they have done. There can be no valid objection to a discontinuance for such a purpose on account of irregularities. New commissioners have since been appointed and commenced their duties.

S. B. STRONG, J. The common council of the city of Brooklyn, on the 19th of January, 1854, and shortly after a fire which had consumed all the buildings on the easterly side of Fulton street, opposite the city hall, adopted a resolution in the following words : "Whereas, that part of Fulton street opposite the city hall is very narrow, and the present is the best opportunity the city may have for some time to widen said street, therefore, resolved, that the matter of widening said street be referred to the street committee." That committee, on the 24th of the following February, reported that they had examined the matter thus referred to them, and were of opinion that public convenience required the suggested improvement, and that then was a very desirable time to effect it, and they therefore recommended that an act should be prepared and forwarded to the legislature, authorizing the common council to have Fulton street widened, agreeably to the red lines on an accompanying diagram. The common council adopted the recommendation, and it was approved by the mayor on the 15th of the following month; and an application was subsequently made to the legislature, by the common council, for the passage of an act to widen Fulton street, according to the recommendation of the street committee. On the 17th of April following an act was passed by the legislature, entitled "An act to widen Fulton street between Red Hook lane and Court street, in the city of Brooklyn," and providing as follows : "Fulton street, between Red Hook lane and Court street, *is hereby widened* as follows :" and the act then proceeded to designate the new boundary lines,

agreeably to the diagram which had been presented to the common council by the street committee. The second section of the act provides that the common council *may* make application to the county court of the county of Kings, or to the supreme court at a special term held in that county, for the appointment of commissioners of estimate and assessment, and that the powers of the courts, and of the commissioners, should be the same as those provided by law in reference to commissioners in opening streets in that city ; and the third section applies the provisions of law relative to opening streets *after the appointment* of the commissioners to the improvement thereby authorized, and directs that the same proceeding should be had thereafter in relation to such improvement, and the collection of the assessments therefor, as if the same were commenced under the existing law for the opening of streets in the said city. On the 24th of April, 1854, the common council adopted a resolution directing the city counsel forthwith, upon the receipt of " the act *widening* Fulton street," to take the necessary and legal measures *to carry out the provisions of the law for that purpose ;* the city counsel accordingly applied to the county court for, and obtained, the appointment of, three commissioners of estimate and assessment. The commissioners, on the 15th of March, 1855, filed their report, and caused a notice to be duly published, that they would meet to review the same on the 28th of the same month. They accordingly met on that day at the office of the city counsel to review their report. No objections in writing were offered by or on behalf of the city ; the committee then corrected their report, but did not file it in the office of the county clerk, nor present it to the court for confirmation in consequence of the action of the common council. On the 30th of the same month, the counsellor for the city sent a communication to the common council stating that he could not assume the responsibility, without further direction, of presenting the report for confirmation, in consequence of the heavy assessment of the city for benefits to the park and city hall, which would require a considerable increase of the taxes. This communication was referred to the committee on assessments,

The People *v.* Common Council of Brooklyn, &c.

That committee, on the 28th of September, 1855, reported to the common council, that inasmuch as the city hall park would be disfigured by the proposed measure, and the assessment for benefit to the city property had been too heavy, and to the property of some individuals too light, and the report would therefore have to be sent back to the commissioners and reconsidered by them, which would increase the expense of the improvement, they would recommend the adoption of a resolution that all proceedings in widening Fulton street, between Red Hook lane and Court street, be discontinued. Such resolution was accordingly adopted by the common council on the 15th of November, 1855. On the 4th of December following the city counsel applied to this court, at a special term held in the county of Kings, for, and obtained, an order (purporting) to authorize the common council to discontinue proceedings in the matter of widening Fulton street. Since then no further proceedings in the matter have been had.

The relator now applies, in his character of a citizen and tax payer of Brooklyn, for a mandamus requiring the common council of the city, and the commissioners, to pursue the usual measures, subsequent to what has been done, to effectuate the completion of the improvement.

The counsel for the city contended, on the argument, that the order of discontinuance, made at the special term of this court, presents at present an effectual obstacle to the application, and must continue to do so until removed (if it should be removed) on appeal. That would be so if this court had jurisdiction of the matter when the order was made ; but there had not been at that time any proceeding on that subject in this court. The application for the appointment of commissioners had been made to the county court. The delegation of the power to act by either that court or the supreme court, at special term, was limited to two purposes : the appointment of commissioners, and the confirmation (or return for correction) of their report when duly presented. (*Act of April* 4, 1850, *tit.* 4, §§ 12, 13. *Laws of that year, pp.* 269, 270. *Act of April* 17, 1854, *to widen Fulton street,* §§ 2, 3.) No other power was delegated to, nor any

general jurisdiction conferred upon, either tribunal. The matter could not properly come before either for any other purpose, nor at any time, except when proceedings were had in reference to the designated objects; it had not been before this court at all until the application for the order was made; that order was not for either of the purposes for which alone this court could act, and therefore it had no jurisdiction to grant it, and such order was consequently void; and as the objection of want of jurisdiction can be raised at any time, when directly or even collaterally involved, it is not in the plaintiff's way. The proceedings to obtain the order are not set forth in any of the papers presented to me by either party on this application; it does not appear that any notice of the motion to obtain the order had been served on any one, or published; probably the motion was unopposed, and the attention of the judge was not particularly directed to the question of jurisdiction. The motions at the special terms in Brooklyn are so numerous that the judges can neither peruse nor indeed hear all the papers presented on ex parte applications, and they must therefore rely upon the statements made by the counsel; these are generally accurate as far as they go, but sometimes there are omissions of facts which the counsel do not, but which the judge might, deem material. This hasty and certainly imperfect action is the necessary result of the pressure of business, and the present defective, and, I must add, unconstitutional arrangement of our judicial districts. There was considerable discussion at the bar as to the weight of the reasons assigned by the committee on assessments, and adopted by the common council, for the proposed abandonment of the improvement; they seem to be rather weak, and were apparently designed more as an excuse than a justification. The question as to the alleged disfigurement of the park was properly before the common council, and as they held their sessions in the city hall, which is in its midst, must necessarily have been considered by its members when their primary resolution was adopted; if it would have been as considerable as is now averred, it could not have been overlooked; then was the appropriate time for the considera-

tion of that objection if it had any foundation, and it should not have been deferred until after the resolution had been adopted by the common council, and at their instance by the legislature, and consequent expensive proceedings been had, and no doubt numerous business arrangements made, on the supposition that the projected improvement would be consummated.

There is nothing before me to show that the objection is well founded, and my own examination of the ground, if it is proper to allude to that, has led me to the conclusion that the exclusion of the small part of it which the proposed measure would require, would neither mar its shape nor impair its usefulness. If, as the common council alleges, the park has been assessed at too high a rate, the statutes provide an adequate remedy; they should have made the objection before the commissioners at the time appointed to review their assessments, and when they met in the office of the city counsel. If they had done that, and presented for the consideration of the commissioners a statement of the facts and considerations upon which they relied, no doubt full justice would have been done, especially as the subject was familiar to one of the commissioners, from his professional and official engagements at the city hall. If they had failed before the commissioners, they could still have appealed to the county court, or to a judge of this court, when the report should be presented for confirmation. Having neglected to present their objections to the commissioners, and to adopt the ordinary measures for redress prescribed by the statute, they ought not now to be permitted to resort to the extraordinary remedy of abandonment. If, however, they had made the usual statutory efforts to procure redress and failed, and they had ascertained that the expense to the corporation would have been beyond any benefit which the completion of the proposed measure would have conferred, they might still have discontinued proceedings if the final adoption of the contemplated improvement had been left to their discretion.

On examining the statute relative to widening Fulton street,

it seems to me that it fully adopts the project, and in effect commands its consummation. Its title is, "An act to *widen* Fulton street," not to permit the common council to do it; the first section provides that such street is thereby widened, as therein designated, not that it might thereafter be done. The statute operated *proprio vigore* to change the legal boundaries of the street; such is the plain, obvious and only import of its language; there is no permission given to alter the boundaries, nor is it, nor can it be, supposed that the common council could do that; they were fixed, so too was the entire measure. It was *un fait accomplé.* Nor is any different intent indicated by the word "authorized," which is twice used in the third section to designate the improvement. The first definition of the verb "to authorize," given by Dr. Worcester in his valuable dictionary, is " to establish by authority," and as that harmonizes with the positive terms used in the title and the first section of the statute, it is no doubt the sense in which it was used by the legislature. It was contended at the bar that the provision in the second section, that the common council may cause application to be made for the appointment of commissioners to estimate and assess the expenses and damages and benefit of the improvement, left it optional with the common council whether to proceed or not, and indicated that the project had not been conclusively adopted and its completion peremptorily ordered by the legislature.

But it is a familiar rule that the word "shall" may be substituted for "may," in the interpretation of a statute, when the good sense of the entire enactment would require the change; and the rule applies when, as in this case, the statute establishes an improvement, and devolves upon any person or persons, or a corporation, the performance of such acts as may be requisite to insure its completion. The legislature would not decree the end without making effectual provision for the means. If the statute had simply devolved upon the common council a discretionary power to pursue or abandon the project, it would have been wholly superfluous, as that body had it before. (*Act*

*of April* 4, 1850, *tit.* 4, §§ 1, 2, 3.) There would have been merely a dispensation with the preliminary notice, and the designation of the district of assessment ; if, indeed, either had been necessary where the only object was to widen the street, which is doubtful. When the language of a statute is susceptible of two interpretations, by one of which something substantial will be accomplished, and by the other little or nothing, the former should prevail. In that, common sense and law concur. It cannot be supposed that the common council would have applied to the legislature for, or that the legislature would have consented to pass, an act for the sole and insignificant purpose of dispensing with a preliminary notice for the brief period of twenty days. Something more must have been designed by both the municipal and legislative bodies, and that, so far as a judgment can be formed from the circumstances and the language used, must have been the conclusive adoption of the measure by the legislature. The common council may have been inclined to devolve the responsibility of the measure upon the higher power, or to give to it more efficiency than it might have acquired from municipal legislation. Although the power to make this improvement had been devolved upon the corporation by its charter, yet the question as to the right of the legislature to exert what had been previously delegated, could not be raised in this case, as the measure was adopted upon the resolution of the inferior body, and subsequently received its full assent.

From the examination which I have been able to give to this case, I am satisfied that the statute is peremptory upon the common council to pursue the designed improvement to its consummation, and as that body has arrested its progress midway, and declines to proceed any farther, a mandamus should be awarded against the common council; another may issue directed to the commissioners, but they should be exempted from the obligation to make any return, on signing a stipulation to abide by such judgment as may hereafter be

rendered against the common council, should that body elect
to proceed any farther in this contest.

Ordered accordingly.

[Kings Special Term, September 1, 1856. *S. B. Strong,* Justice. Affirmed
at a General Term in Kings County, October 14, 1856, held by *Brown, S.
B. Strong* and *Birdsey,* Justices.]