## SUPREME COURT.

THE PEOPLE *ex rel.* THE COMMISSIONERS FOR THE ERECTION OF A PUBLIC MARKET IN THE CITY OF NEW YORK agt. THE COMMON COUNCIL OF THE CITY OF NEW YORK.

The act of 1865 (*Sess. L.* 1865, *p.* 211, § 5), directs and authorises the mayor, aldermen and commonalty of the city of New York, to *create* a public fund or stock to be denominated "Market Stock," for the amount of $75,000; and section 6 of the act directs the comptroller of the city to prepare and issue *said stock* within thirty days after being required in writing so to do by the commissioners. The stock, therefore, must be created by the action of the common council of the city, before the comptroller can be required to issue it.

Although the mayor, aldermen and commonalty of the city of New York are mentioned in the act as being required to create the stock, the *common council* of the city constitute the only agency or instrumentality by which the *corporation* of the city can act in carrying out the requirements of the act in creating the stock, &c. Consequently a *mandamus* is properly directed to the common council to set the corporation in motion.

*New York General Term, January,* 1866.

*Before* BARNARD, *P. J.;* CLERKE *and* INGRAHAM, *Justices.*

APPEAL from an order entered on the 29th day of November, 1865, granting a peremptory writ of mandamus, commanding the common council to enact an ordinance creating a public fund or stock, to be denominated "market stock." The application is founded upon sections 5 and 6, of chapter 120, of the laws of 1865, which are as follows:

"§ 5. The mayor, aldermen and commonalty of the city of New York, are hereby authorised and directed to create

a public fund or stock, to be denominated 'market stock,' for the amount of seventy-five thousand dollars, which stock shall bear date the first day of May, 1865, and shall bear interest at and after the rate of seven per cent per annum, payable semi-annually, and be redeemable on the first day of May, 1894; the said mayor, aldermen and commonalty, being hereby authorised and directed to pledge the faith of the city and county, and the same is hereby specifically pledged for the redemption of the said stock, and the several parts thereof, when the same shall become due and redeemable under the provisions of this section, by tax upon the estates real and personal in the city of New York, subject to taxation.

"§ 6. The comptroller of said city of New York shall, within thirty days after being required in writing by said commissioners so to do, prepare and issue the said stock specified in the preceding section, for the full amount of seventy-five thousand dollars, and offer the same for sale; such offer to be by advertisement in not less than three newspapers published in the city of New York, of the largest circulation, and continued for not less than twenty nor more than thirty days; at the expiration of which time said stock shall be awarded to the highest bidder therefor, and the proceeds thereof forthwith deposited with the chamberlain of said city of New York, to the credit of the commissioners appointed under this act. The said comptroller shall determine what shall be the nominal amount or value of said stock per share, and of what number of shares the same shall consist, but he shall not be authorised to issue, sell or dispose of any of the same at a less rate than its par value."

RICHARD O'GORMAN, *Counsel to the Corporation, and*
W. C. TRULL, *Assistant Counsel, for appellants.*

I. No action upon the part of the common council is

requisite or necessary to the creation of the stock in question.

(a.) The fifth section of the act of 1865, fixes the amount of the stock to be issued, the rate of interest, and the time when payable ; and also the time when the stock shall be redeemable. This section further provides a fund for the redemption of the stock, and pledges the faith and credit of the city and county for its redemption.

The sixth section of the act directs the comptroller to issue the stock specified in the fifth section, within thirty days after being so required by the commissioners. This section leaves it discretionary with the comptroller to determine the nominal value or amount of the stock per share, and the number of shares of which it shall consist, and only limits him in its disposition to award it to the highest bidder, and not to sell it at a rate less than its par value. The amount of the stock being fixed, the rate of interest and the time when payable determined, the fund for the redemption of the stock provided, and the faith and credit of the city and county pledged to such redemption, nothing remains for the common council to do, and it would be the merest surplusage for that body to enact an ordinance providing for the creation of a stock which is already provided for and created by statute.

The remedy of the relators is apparent. Relying upon the provisions of the fifth section of the act, they should demand of the comptroller a compliance with the requirements of the sixth section, which makes it his duty to issue the stock within thirty days after its issue is demanded by the commissioners. Should the common council enact an ordinance in the precise words of the fifth section of the act of 1865, it would add nothing to the existence of the stock. The true construction of the fifth and sixth sections of the act of 1865, is to construe the former section as providing for the creation of a stock by the corporation, which

is to be created by the comptroller's issuing the stock in obedience to the requirements of the sixth section.

II. The common council owe no duty to the relators.

(*a.*) It is an elemental rule that a party applying for a *mandamus* must show a clear legal right to have the act done, the performance of which he seeks to enforce, and must establish a corresponding duty upon the part of those against whom the writ is asked, to perform the act as required. (*People ex rel. Green* agt. *Wood*, 35 *Barb.* 653, 659, 661; 22 *How. Pr. R.* 286.). The provisions of the act relied upon to support the order appealed from impose no duty upon the common council. The language of the act is, "the mayor, aldermen and commonalty of the city of New York, are hereby directed to create a public fund or stock," &c., &c. The duty is imposed upon the corporation, and not upon the common council. The common council is not the corporation, but only one of its constituent parts, and its members are merely the agents and servants of the corporation, which is composed of all the citizens of the city. (*Clarke* agt. *City of Rochester*, 14 *How. Pr. R.* 193; *Lowber* agt. *Mayor*, 5 *Abb.* 329, 336; *Wyatt* agt. *Benson*, 4 *Abb.* 186.) The duty being imposed upon the corporation, that is the body to whom, within the rule above stated, the writ of mandamus should have been directed.

When the court determines that the corporation owes to the relators some duty with reference to the creation of the stock in question, and issues its writ of *mandamus* commanding the performance of that duty, if obedience to that mandate requires any action upon the part of the common council, the corporation will take care that such action is taken in the discharge of the duty which the common council owe to it (*People ex rel. Green* agt. *Wood, supra*).

III. The order appealed from should be reversed, and the writ issued thereupon vacated.

CEPHAS BRAINERD *and*
JAMES S. STEARNS, *counsel for respondents.*

This application is made under the act of the legislature,
passed at the last session (*Ch.* 180, *Sess. Laws, p.* 211), to
compel the common council of the city of New York to
create, by the passage of an ordinance to that effect, the
$75,000 of "market stock," provided by the 5th section
of the statute. The respondents below read no counter
affidavits, and the application was disposed of on the show-
ing made by the relators.

It appears by the moving papers, and was conceded on
the argument below :

1. That a proper demand had been made on behalf of
the relators upon the common council, for the creation of
the stock, in the month of May last.

2. That no steps were ever taken by the said common
council towards a compliance with the demand, save that
the matter in both boards was referred to some committee.

3. That by the non-action of the respondents below, the
work of the commission had been, and still was, greatly
delayed and hindered.

4. That the property specified in the act as the site of
the proposed market, was purchased in the name of the cor-
poration in 1857 for that purpose, at a cost of nearly
$200,000, and by solemn legislative action dedicated "to
the use and purpose of a market;" and that down to the
present time it has remained unoccupied and unproductive.
(*See Lowber Case,* 7 *Abb. Pr. R.* 158, *and proceedings of
Aldermen and Councilmen, August* 16*th,* 1856, *November* 6*th,*
1856, *February* 18*th,* 1857.)

5. That the relators have no remedy except by *man-
damus.*

It was contended by the relators, and cannot be disputed
with any show of reason, that the conduct of the common
council showed plainly an intention to defeat the purposes

of the statute. That these *quasi* legislators were seeking by evasions and delays, to render the completion of the work within the time fixed by the statute impossible. That the facts as set out at ff., 11-15 of the appeal paper, warrant the court in finding a refusal. The learned justice at special term did so find. (*The Queen, &c.* agt. *Commissioners of Navigation, &c.* 8 *A. & E.* 901 ; *The Queen, &c.* agt. *Vestrymen of St. Margaret's, Id.* 889.)

The various counsel for the common council conceded at special term that the writ must issue unless the following objections were well taken :

1. No action on the part of the common council is required, the stock is created by the statute, and the *mandamus* should run to the comptroller, to compel him to issue the stock, if on demand he refuses to do it.

2. The act says, the mayor, aldermen, &c., shall create this stock, therefore the *mandamus* should run to the whole corporation.

3. The common council, *i. e.*, the boards of aldermen and councilmen being legislative, and vested with discretion, cannot be compelled to vote in any specific way.

4. The writ should run to the committees of the two boards, to whom the matter is referred.

I. It is conceded that the legislature had the power to pass this statute and create this commission, for just the purposes, and in just the way it has done, save in respect of the imposition of an obligation on the common council to do a particular thing. It is agreed that the cases *People* agt. *Draper*, 15 *N. Y. R.* 532 ; *Sill* agt. *The Village of Corning, Id.* 297 ; *Darlington* agt. *The Mayor*, 28 *How. Pr. R.* 352 ; *People* agt. *Pinckney*, 32 *N. Y. R.* 377 ; *People* agt. *Bachelor*, 22 *N. Y. R.* 128, place the validity of this law beyond question.

II. We now claim that under the law as thus established, every one of the objections urged is set at rest. The supreme power in respect to the erection of this market

being in the legislature, they have the unquestioned right to select the means by which it shall be built. They can call in as many collateral agencies as may seem good, or employ but one; they can order the payment of the whole of these construction bills, in money realized immediately by taxation, or they can make the burden less heavy by providing for the issue of bonds. They can order the mayor to execute those bonds, or any other official. They can order unimproved property of the city to be sold for the purpose (*per* Denio, *C. J., in Darlington* agt. *The Mayor, supra*), and they can make it imperative upon any local officer or body of officers, to perform any part, great or small, in the work proposed. It is no answer to this to say that in respect of other matters these local officers or bodies of officers, are vested with discretionary powers, for here the legislature in the exercise of its acknowledged powers, has imposed an additional duty upon them, in respect of which they are not vested with any discretion; in respect of which they are mere executive or ministerial officers, charged with a duty which they cannot avoid, *i. e.,* the creation of this "market stock."

III. We will now answer in the order stated, the several objections:

1. No action required on the part of the common council, &c. It is plain upon a mere reading of section 6, that the comptroller cannot act until the stock has been created, as provided in section 5. It is the stock mentioned in that section, and none other, which he is to issue; stock created as indicated in that section, and not by an act of the legislature. A fatal answer to an application for a writ against the comptroller would be: "There has been no stock as yet created under section 5." The legislature did not intend to create the stock; for they have commanded another body to do it in the section 5, *i. e.,* the legislative department of the corporation, the common council. The 12th section of the "Metropolitan Fire District" law, is a precedent for a law

creating stock. That commands the comptroller to issue bonds, and the mayor to sign them and affix the seal of the corporation. Here no such thing is done or contemplated. The compilations of Judge Davies and Mr. Valentine, are full of precedents for the sections 5 and 6 of this law, and it is drawn according to the forms sanctioned by a usage of many years; and under these statutes, it has been the uniform practice of the common council to enact an ordinance creating the stock, and for the comptroller to then perform the ministerial duty of issuing it. Again, there are no words in the statute which give any color for the argument in behalf of the common council; it does not purport to create the stock; it pledges the faith of the city for the redemption of the stock to be created under section 5.

2. The act specifies the corporation, and the writ should so run, &c. This is a fallacy; upon whom could service be made, the mayor, the comptroller and the corporation counsel? What would be the answer to it? The common council only can create the stock, and a writ should be issued against them. And how can they be compelled to act? Only by a writ, which by proper service, shall take effect on them individually. They must each be compelled by a mandatory process to vote in favor of the proposed ordinance. Is it the duty of this commission to obtain a *mandamus* generally against the corporation, for the name used in the act is but the name of the corporation? (The mayor, the common council and the comptroller, are not the corporation, nor are they all, when combined with other officials, the corporation. DENIO, C. J., in *Darlington* agt. *The Mayor.*) And then this corporation after going to the court of appeals on the question of the right to the writ, is, on being defeated, to resort to the same course in respect to the common council, to obtain the passage of the ordinance, upon which they go to the court of appeals; then a like proceeding to compel the mayor to sign, with a like

NEW YORK PRACTICE REPORTS. 335

People *ex rel.* Com. of Public Markets agt. The Common Council of N. Y.

litigation; then the same thing in regard to the comptroller, in every respect; but what if at the outset, the corporation counsel should decline to sue out any of these writs? Would not this commission be at last reduced to the necessity, notwithstanding the proposition of the respondents, to take these extraordinary proceedings against some division of the city government? and if that be true, then why not upon the immediate body whose willful perverseness is now attempting to defeat the purposes of the legislature, and the wishes of the residents of the city? Do not courts seek to avoid circuity of action? Then, upon the reason of the thing, the proposition is absurd. How stands it upon authority? This precise question was made on the return to the alternative writ in *Commonwealth ex rel. Hamilton* agt. *Select and Common Councils of Pittsburgh* (34 *Penn.* S. R. 496), carefully examined and utterly repudiated by the court. So, the opinion of the court by BRONSON, J. (*pp.* 460, 461), in *McCullough* agt. *The Mayor of Brooklyn* (23 *Wend. R.* 458), is decisive that the writ lies against the body upon whom the duty of "putting the necessary machinery in motion," is imposed. So, *People* agt. *The Common Council of Syracuse* (20 *How. Pr. R.* 521), is strong to the same point. There the act of opening the streets was an act of the corporation, but the common council was to set the machinery in motion, and accordingly the writ was issued against them. The earlier English cases upon these topics are collected in *Archbold's Practice of the Crown Office*, 239, 250, and in *Tapping on Mandamus* (*Law Lib. N. S.* 142), 94.

But finally, the statutes of this state put this question at rest. Chapter 603, laws of 1853, section 5 (*Sess. Laws, 1853, pp.* 1135, 1136), provide that no debt of the character contemplated in the act under consideration shall be contracted, except by virtue of an ordinance passed by the common council of the municipal corporation, by a vote of not less than two-thirds. There are many pro-

visions in that statute which cannot apply to this case, but so much of the section as is here referred to, clearly applies. Of course, no one contends that the power to pass an ordinance creating this stock or debt resides anywhere in the corporate authorities but the common council. (*See Amended Charter, Sess. Laws* 1857, *vol.* 1, *p.* 874, § 5.)

3. But we are told that the common council is vested with a discretion, and cannot be compelled to vote. The answer is, that in respect of this law they are vested with no discretion whatever, any more than the board of supervisors is vested with a discretion in respect to the auditing of a bill for the salary of a county officer, fixed at a specific sum by law. Here the obligation is equally mandatory. The legislature has imposed a duty which does not involve the exercise of any discretion whatever. The authorities are controlling upon this point. (*The People agt. Common Council of Brooklyn,* 22 *Barb. S. C. R.* 404; *Green agt. Common Council of Syracuse,* 20 *How. Pr. R.* 491; *Commonwealth, &c. agt. Select and Common Councils of Pittsburgh,* 34 *Penn. S. R.* 496; *People ex rel. Record Commissioners agt. Supervisors of New York,* 11 *Abb. Pr. R.* 114; *School District No.* 1, agt. *School District No.* 2, 3 *Wis. R.* 333; *State, &c. ex rel. Ordway agt. Smith, Mayor, &c.* 11 *Wis. R.* 65.)

4. The observations already made are a complete answer to the suggestion that the writ should run to committees of the common council. Those instruments of the common council cannot compel the bodies of which they are the servants, to perform a public duty. It is clear, in every aspect, that the order directing the writ to issue, should be affirmed, with costs.

CLERKE, J. On the argument the only points taken by the counsel for the corporation, were first, that no action upon the part of the common council was necessary to the

creation of the stock in question; and second, that the common council owe no duty to the relators.

As to the first point. The act (*Laws of New York for 1865, p.* 211, § 5) directs and authorises the mayor, aldermen and commonalty of the city of New York to create a public fund or stock, to be denominated "market stock," for the amount of $75,000. Section 6 directs the comptroller of the city to prepare and issue *said* stock within thirty days after being required in writing so to do by the commissioners. What stock? The said stock; that is, the stock which in the preceding section the mayor, aldermen and commonalty of the city of New York are directed to create. The comptroller evidently can prepare and issue no other stock than that mentioned in the 5th section; and any action relating to any other would be null and void, and of course, the stock would be utterly worthless.

As to the point that the common council owe no duty to the relators. The language no doubt of the act, as we have seen, is "the mayor, aldermen and commonalty of the city of New York, are hereby authorised and directed to create a public fund or stock," &c. The words common council, do not appear in the act. The common council, however, constitute the only agency or instrumentality by which this behest of the supreme legislature can be obeyed. The mayor, aldermen and commonalty, can act in no other possible way in the premises than by and through the common council. They cannot compel the latter to do so. The mayor, aldermen and citizens generally, who, I suppose, constitute the commonalty, may daily raise their voices in the loudest tones to the honorable the common council, commanding them to create this stock, and the common council could laugh at them, as they have laughed at the commissioners. The only possible method by which the common council can be compelled to do so is by application to this court, which alone can issue a mandamus capable of being enforced.

This point has been frequently determined by authority. In the language of BRONSON, J., in *McCullough* agt. *The Mayor, &c., of Brooklyn* (23 *Wend.* 458), the writ lies against the body upon whom the duty of putting the necessary machinery in motion is imposed. In *The People* agt. *The Common Council of Syracuse* (20 *How. Pr. R.* 491), the act of opening the streets was the act of the corporation, but the common council had to set the machinery in motion, and accordingly the writ was issued against them.

The obligation was mandatory on them. They have no discretion in the matter as in ordinary cases of municipal legislation; they must obey the supreme legislature. (*See also the Commonwealth* agt. *Select and Common Councils of Pittsburgh*, 34 *Penn. S. R.* 496; *Archbold's Practice of the Crown Office*, 239, 250, *and Tapping on Mandamus*, 94, *in both of which the early English cases on this subject are collected.*)

The order should be affirmed, with costs.

BARNARD, P. J., concurred.

INGRAHAM, J., *dissenting*. I concur in the propriety of granting this writ were it not directed to the wrong parties. The statute imposes the duty of creating this stock on the mayor, aldermen and commonalty of the city of New York. This is the corporate title of the municipal corporation. They act by the common council and the mayor. No action of the one without the consent of the other, can enact the necessary laws for creating the public stock, except in case of a veto from the mayor. The mandamus directs the common council to enact the necessary law to create the stock. This they cannot do without the mayor, and they are required to do what is not in their power. I have no objection to a modification of the command in the writ, so as to require them to prepare and pass in their separate boards the necessary ordinance for that purpose, and on complying with that direction their duty in the matter is discharged,

In *The People* agt. *The Common Council of Brooklyn* (22 *Barb.* 404), the writ was so directed and allowed, but in that case the statute directed the common council of Brooklyn to do the act. So in the case of *The People* agt. *Common Council of Syracuse* (20 *How. Pr. R.* 491), the statute directed the common council after the award to pay the money.

In *McCullough* agt. *Mayor of Brooklyn* (23 *Wend.* 458), BRONSON, J., said, the proper remedy was a mandamus against the corporation to exercise their functions according to law. Two things are necessary, the action of the common council and the approval of the mayor, before the law can be enacted.

If the writ had been directed to the corporation, it would have been their duty to pass the law; as it is, the remedy at best will be imperfect.