Daniels, J.
The mayor of the city, in submitting to the common council the estimates for his department, included the sum of $1,250 for salaries and expenses of executing the civil service law. This item was considered by the common council at its regular meeting held on the 6th day of April, 1885, when, by its action as a committee of the whole, it was stricken out of the estimate; and it has been stated in one of the affidavits on which the application has been made, that the common council in its action was controlled by the determination to make no provision for salaries and expenses of executing the civil service laws, and designed thereby to nullify and prevent their execution. This has not been denied, and the action taken by that body, or its members tends to either sustain this conclusion, or that the common council are acting under a misapprehension concerning their duties and obligations under the law. And it is t'o correct their action in this respect that the writ of mandamus has been applied for, directing the common council to consider and sustain the estimate so far as it was made by the mayor or may be required for the execution of the provisions of the law relating to the city of Buffalo.
The application has been resisted on the ground that the action which was taken was not that of the common council, but of its committee; but an answer to the objection is presented by the circumstance that the committee of the whole, by which the action was taken, was made up of the members of the common council, and in their action they officiated as the common council of the city. Their powers and duties in *63 this respect have been prescribed by section 6, title 5 of the charter of the city of Buffalo, and that requires, when the estimates shall be made and submitted, that the common council shall proceed to consider the same, and whether it does so nominally as a committee, or as the common council itself, the exercise of the authority will be precisely the same. The power has been conferred alone upon the common council, and whether its members act under that name, or under the name of a committee of the whole, can make no substantial difference in the exercise of this authority; it will still be, under this section, the action of the common council, although it may not be so final in its character as to render further consideration needless. That further consideration by the members of the common council as such, or acting as a committee of the whole, would change the result is extremely improbable, inasmuch as the estimate was stricken out by the decisive vote of thirteen to one. The probabilities, on the contrary, are so decided, arising out of the action which has been taken, as to support the conclusion asserted in the affidavit, that it is the design of the common council to reject the estimated item, and in that manner prevent the law from being carried into effect. And these facts are sufficient to entitle the application to be sustained if a legal right to the writ has been made out and the applicant is authorized by law to maintain the proceeding.
It is true, as has been urged on behalf of the common council, that the writ is not to be issued in a doubtful case, or where any other remedy for adequate redress shall be found' to exist. But no othér remedy has been prescribed or provided by law for the redress of the wrong complained of as the foundation of this action. And if the right is to be clearly derived from the law1; then neither of these objections stand upon any legal foundation.
The right to the allowance of the estimate, or of some other proper and adequate amount, depends upon the construction which shall be given to chapter 354 of the Laws of 1883 as it *64 has been amended by chapter 410 of the Laws or 1884. By these acts very definite and broad provisions were first made to regulate the civil service of the state, and to provide for promotions and appointments to certain public offices of the state. This, so far as the laws were rendered applicable to the city, was to be done by open and competitive examinations, testing the fitness of the applicants for appointment in the public service. It was not, in the first instance, rendered obligatory upon the city, but the mayor was vested with the authority to provide rules and regulations for carrying its provisions into effect in the official civil service of the city so far as the offices designated and mentioned in it were referred to. The mayor of the city, it has been made to appear, did provide such rules and regulations, and persons were employed and selected to make investigations and examinations authorized by the law, and they have to the present time been conducted without subjecting the city to expense. But by section 2 of chapter 410 of the Laws of 1884, the mayor of the city was no longer left at liberty to exercise his volition upon the subject. But the duty was made mandatory, and he was not only authorized but thereby directed to prescribe such regulations as had previously been indicated in the law of 1883, or to continue and carry those into effect which had been previously adopted. And to carry out the design and intention of the law it was provided that the mayor “ shall from time to time employ suitable persons to conduct such inquiries and make examinations, and shall prescribe their duties and establish regulations for the conduct of persons who may receive appointments in the said service ” (laws 1884, 488, sec. 2). And to render the observance of this duty still more imperative, if that could be done after the employment of this positively mandatory language, it was further declared in the same section that “ after the termination of three months from the passage of this act (which took effect on the 29th day of May, 1884) no officer or clerk shall be appointed, and no person shall be admitted to or be promoted *65 in either of the said classes now existing or that be arranged hereunder pursuant to said rules until he has passed an examination or is shown to be exempted from such examination in conformity with such regulations.” These directions are so clear and positive as to leave the mayor no discretion upon the subject, but he must from time to time employ suitable persons to conduct the examinations and make the inquiries required. But neither this act nor the one preceding it contains any express provision for compensating the persons to be so employed by the mayor, and for that reason it has been urged that their services were intended to be obtained gratuitously. But the act has not so declared or provided; and by requiring the mayor to employ suitable persons to perform these services, it is to be implied from that language that it was intended that they should be reasonably remunerated for such services. For in no other manner can persons be ordinarily induced to render services of the description of those prescribed by the law. What the mayor has been required to do is to employ suitable persons, and the power to employ others to render services on behalf of the municipality, includes the obligation to provide for their compensation. The employment can usually be expected to be secured in no other way; and when a person or persons are employed it is a reasonable, as well as a natural implication, that the services rendered m me course of the employment shall be reasonably or correspondingly rewarded. This is the effect of employing others to render services in the ordinary relations of business, and as the city has not been exonerated from that effect it may be assumed that it was designed that it should observe and fulfill the ordinary obligation arising out of the act of employment. In no other way can the services of others be ordinarily secured. It is true that they have been otherwise secured up to the present time under the authority contained in the preceding law. But there is no expectation that gratuitous services will be further rendered for the city under this statute by persons whom the *66 mayor shall consider it his duty to employ. It has been intimated that persons may be found who would be willing to render the same service without compensation, but they may not be persons whom the mayor, in the exercise of this authority, would be willing to select or appoint. That certainly is his judgment, for he made this estimated amount upon the apparent understanding that it would become necessary to enable him to carry into effect these provisions of the statute. And where an appropriation of money is essential for that purpose, although not so declared in the law itself, the obligation to make it is to be derived by implication from it. The rule upon this subject is, that “ whenever a power is given by statute everything necessary to make it effectual or requisite to attain the end is implied; ” and “ where the law requires a thing to be done it authorizes the performance of whatever may be necessary for executing its commands” (Sedg. on Statutory, &c., Law, 92; 1 Kent [7th ed.], 513, marg. p. 464). Steif agt. Hart (1 Comst., 20, 30); Chipman agt.Montgomery (63 N. Y., 221), and the case of Baker agt. City of Utica (19 N. Y., 326), requires no different construction to be placed upon the statute. It is, on the contrary, an authority in favor of the right of persons rendering services to a municipal corporation to be compensated for the value of such services where no specific provision of law has been made declaratory of the right or extent of compensation. In that class of cases the compensation is to be a reasonable remuneration for the services rendered ; and it would be the duty of the mayor, within these statutes, to confine the compensation to such limits. What the law intended was that the mayor should be obliged to employ the persons whose services should be requisite to carry out its provisions, and to exercise all the authority which should become necessary to attain that end. And as the persons employed would be entitled to be reasonably compensated for the services rendered by them the obligation to provide for the payment of that compensation has been included in the law. By omitting *67 to provide the manner in which the money should be obtained to make this compensation the end and purpose of the law are not to be defeated; for, as the services are on the employment' of the mayor and on behalf of the city, the funds required to remunerate the employment are necessarily a charge upon the city, as all other expenses of the municipal government have been made by the charter. Whatever may be required to meet these obligations has been directed, by title 2 of the charter, to be estimated by the heads of the departments. This includes all expendieres considered to be necessary for the ensuing fiscal year in the administration of the affairs of the city government. This is such an expenditure, and under this portion of the charter it was a proper subject to be estimated, and estimated by the mayor, inasmuch as he is the person who was to exercise this authority and employ the persons required to render these services. Pursuant to this obligation the mayor made the estimate for what he considered would be the necessary expenses of carrying these provisions of the laws of the state into execution, and communicated and presented the estimate to the common council. This body has been authorized by section 6 of title 5 of the charter by a vote of two-thirds "of all the members elected to alter or amend the estimate. But where it has been made pursuant to the direction of a positive statute, as it has been in this instance, the common council has not been invested with the power of wholly rejecting the estimate. It may under the authority to alter or amend the estimate, extend, modify or limit it, as that may appear to be justified by the facts, but the common council has no authority arbitrarily to reject the estimate. Its legal, as well as its absolute duty is, on the contrary, to consider it in good faith, with sound judg-' ment and discretion, and if any misapprehension has intervened in its amount, to correct it and apportion it to the probable necessities of the service for which it may be designed. This, according to the papers which have been produced upon the application, has not been done. The esti *68 mate was not. considered, but it was arbitrarily rejected, for the purpose, as it has been stated, of defeating the execution of the law. That neither the members of the common council nor any other official of the state or city has the right or power to do. The government, whether general of local, is one of laws, and when a law has been constitutionally enacted it is the imperative duty of all public officers, and this was expressly made so by the act itself, to carry its provisions into effect. Every public officer is required, before he can enter upon the discharge of his duties to take his official oath that he will discharge the duties of his office according to the best of his ability, and no official duty is more imperative or important than those which the positive laws of the state have declared shall be observed and performed. Beyond this the law has further re-enforced this obligation by a very general provision declaring that “ a public officer or person holding a public trust or employment, upon whom any duty is enjoined by law, who willfully negglects to perform the duty, is guilty of a misdemeanor” (Penal Code, sec. 1175). Ho public officer has been invested with the discretion to omit to carry into effect a law of the state for the reason that he may not approve of its object or policy, or for any other reason. He is allowed to exercise no such choice or authority, but the obligation is general and imperative to carry the laws of the state into execution according to their fair import, to be derived from the language employed in their enactment.
By rejecting the estimate communicated in" this manner to the common council, the authority of the mayor to execute this mandatory provision of the act of 1884 may be practically nullified. For no balance, it has been shown, will remain of the estimate submitted for the expenditure of bis own department' in other respects, which could be appropriated to the payment of persons employed by the mayor under the authority of the law of 1884. And where that is the fact, and no appropriation exists out of which payment can be *69 made, by section 9 of title 5 of the charter contracts have been prohibited from being made, and no liability for payment can be created when they may be made. And no warrant for the expenditure to be incurred in the performance of any such contract, if it should be made, is allowed to be paid by the treasurer of the city. By striking out this item from the estimate of the mayor therefor, he will be deprived of the ability to perform the duty which the act has declared shall be performed by him, and in that manner this provision of the law will be wholly defeated and rendered nugatory. And that the members of the common council of the city cannot, in the exercise of any legal authority with which they have been invested, accomplish. The authority which has been given them has been designed to promote and secure the execution of the laws, and not their nullification by their failure or refusal to act.
The ease is not within section 4 of title 3 of the charter of the city, for the reason that the persons to be selected and employed by the mayor will not be persons elected or appointed under the charter of the city, but the power to appoint them is wholly derived from the acts of 1883 and 1884, which have already been mentioned.
That the writ of mandamus is the appropriate remedy by which the common council may be required to exercise the authority conferred upon it by law for the benefit of the public, cannot admit of any serious question. It was employed to secure the observance of a duty enjoined by the common council of the city of New York, in People agt. Common Council, etc. (45 Barb., 473), which was afterwards affirmed by the court of appeals (3 Keyes, 81). And as the case presented by the facts supported by the affidavits has been made out, the right disclosed by it may be enforced and maintained through the instrumentality of this writ, under this authority.
The remaining objection to be considered is that involving the power or right of the present applicant to apply for the issuing of the writ. He is shown to be a citizen and taxpayer of the *70 city, interested, therefore, in the orderly maintenance of its government. That result can only be secured, so far as these legislative acts extend, by observing and conforming to their provisions. If they are not complied with, then, so far as public offices are to be filled to which they relate, they cannot be supplied, and the government of the city to that extent will be subverted. And every citizen has such an interest in its affairs as to be entitled, by a proper application to the court, to avert the occurrence of these consequences. It is only when the application for the writ is made to secure some personal or private redress that the applicant must be shown to be interested in obtaining it before the writ can be directed to issue. Where the act omitted to be performed affects the public interests generally, and all citizens are equally concerned in securing its performance, and that has been enjoined by a law of the state, a different rule prevails. There it is sufficient to support the application that the applicant is a citizen and entitled to insist upon the execution of the laws of the state. These laws are made for the promotion of public order and individual security, and accordingly every citizen has a sufficient interest in their execution to entitle him to prosecute an application of the description. Laws are enacted for the well being, good order and security of the community, and of its constituent members. Public officers are provided for, elected and appointed to execute their provisions, and where they designedly fail or intentionally omit to do that, every citizen has the inherent right to apply to this court and insist upon it that the writ of mcmdamus shall issue in such a form as to secure the observance of that duty. The authorities in this and several other states, and those also of the court of kings bench in England, have gone very far in supporting this proposition. In fact, the utmost limit of judicial interference has been reached for the purpose of sustaining the right of private persons to insist upon the performance of public duties by public officers. An extreme case was that of the King agt. Brown, note of which will be *71 found in 3 Term, 574, under the title of Rex agt. Smith, where an application of this nature was sustained against the common councilmen of York, because they had failed to observe the requirement of an act of parliament declaring that corporate officers generally, as a qualification for holding their offices, should receive the sacrament within six months. The interest of the applicant in the observance of this duty was extremely insignificant, and yet the application was sustained because it was made to enforce the observance of an act of parliament which interested all the corporations in the kingdom. This authority, as well as others maintaining the same general conclusion, were fully approved in the case of People agt. Collins (19 Wend., 56). And in the case of People agt. Halsey (37 N. Y., 344), it was also held to be a matter of but slight importance whom the applicant or relator should be, so long as he does not officiously intermeddle in a matter with which he has no concern. The rule, it was said, “ that a relator in a writ of mandamus must show an individual interest to the thing asked, must be taken to apply to cases where an individual right is alone involved, and not to cases where the interest is common to the whole community ” (Id., 348; High on Extraordinary Remedies, sec. 431, and cases cited in note). The rule is different in some of the states, but here it has become fixed and established, allowing every citizen the right to compel public officers, whose duty it has been made to do so, to execute the laws of the state enacted for the benefit of the community, and where the government is solely one of laws, as that of the state and the city most clearly are, the rule is one of a salutary and beneficial character.
¡Neither of the objections, which have been taken to the application, are capable of being maintained, and as the case has been held over with the expectation that the action of the common council might be voluntarily reconsidered in such a manner as to secure the observance of the law without a resort to this remedy, and that has not been done, no other alterna *72 tive remains but to direct that the writ of mandamus shall be issued. This writ will require the common council to proceed in good faith to the consideration of the estimate submitted for this contemplated expenditure by the mayor, and to allow it and include it in the estimates for the ensuing fiscal year, so far as it may be found requisite to do so for the maintenance and execution of the law. What the common council will be required to do is to consider and dispose of the estimate precisely the same as it does any other lawful estimate submitted for its action; to exercise its judgment carefully and intelligently upon the subject and to allow the estimate as it may have been submitted or as it may be altered or amended solely pursuant to the exercise of that judgment, guided by the facts which, in the faithful discharge of its duty, may be found to exist.
The order to be entered will be settled on notice to the city attorney.